**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

MARCEL SMITH,

        Petitioner,

v.                                   Case No. 07-cv-15274

RAYMOND BOOKER,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Petitioner Marcel Smith is a state inmate currently incarcerated at G. Robert

Cotton Correctional Facility in Jackson, Michigan.  Petitioner was convicted after his

Wayne County Circuit Court jury trial of second-degree murder, Mich. Comp. Laws §

750.317; assault with intent to do great bodily harm less than murder, Mich. Comp.

Laws § 750.84; possession of a firearm by a felon, Mich. Comp. Laws § 750.224f; and

possession of a firearm during the commission of a felony, Mich. Comp. Laws §

750.227b.  He was sentenced to forty-five to seventy-five years for the second-degree

murder conviction to be served concurrently with a term of six to ten years'

imprisonment for the assault conviction and a term of three to five years' imprisonment

for the firearm possession conviction.  He was also sentenced to serve a consecutive

two year term of imprisonment for the felony firearm conviction.  Petitioner, through

counsel, has filed a petition for writ of habeas corpus under 28 U.S.C. §2254.  For the

reasons that follow, the court will deny the petition.

**I. BACKGROUND**

Petitioner's conviction arose from the shooting death of Thomas McClain and the

assault of Daniel Baxter.  Baxter testified that as he and McClain walked out of a party

store and proceeded to walk down the street, they were accosted by several individuals,

some in vehicles and some on foot.  Lawrence Armstrong, Petitioner's brother, got out

of the vehicle he was riding in and chased McClain into a field while shooting in

McClain's direction.  Baxter, although he would later recant, identified Petitioner as

being a passenger inside one of the vehicles and as the person who shot him in the leg.

Baxter also identified Allister McGhee as the individual who was driving the vehicle in

which Petitioner was a passenger.  McClain did not survive his gun shot wounds.

Petitioner and McGhee were tried jointly as co-defendants at trial.  McGhee was

acquitted of all charges.  Lawrence Armstrong was tried separately.[1]

Petitioner filed a direct appeal of right with the Michigan Court of Appeals raising

the following claims:

---

[1]Lawrence Armstrong was convicted of first-degree premeditated murder, assault with intent to commit murder, and felony firearm.  He was sentenced on November 8, 2001 to life imprisonment on the first-degree murder conviction, ten to twenty years for the assault conviction and a consecutive two year term of imprisonment for the felony-firearm conviction.  Armstrong's conviction was affirmed on appeal and his application for leave to appeal with the Michigan Supreme Court was denied.  *People v. Armstrong,* No. 238863, 2003 WL 22299824 (Mich. Ct. App. Oct. 7, 2003); *lv. den.* 679 N.W.2d 65 (Mich. 2004) (table).  Armstrong subsequently filed a motion for relief from judgment which was denied and his applications for leave to appeal with the Michigan Court of Appeals and the Michigan Supreme Court were denied.  *People v. Armstrong,*  No: 275003 (Mich. Ct. App. May 24, 2007); *lv. den* 741 N.W.2d 319 (Mich. 2007) (table).

I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED INADMISSIBLE HEARSAY TO BE PRESENTED TO THE JURY.

(a) THE ERROR INVOLVING INADMISSIBLE HEARSAY WAS COMPOUNDED BY REFERENCE TO DEFENDANT HAVING [BEEN] RELEASED FROM JAIL.

(b) THE TRIAL COURT ERRED IN FAILING TO INSTRUCT ON THE USE OF A PRIOR CONSISTENT STATEMENT.

II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED INTO EVIDENCE INADMISSIBLE HEARSAY ELICITED DURING THE PHOTO ARRAY.

III. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION FOR DIRECTED VERDICT AND ALLOWED THE CHARGE OF FIRST DEGREE MURDER TO GO FORWARD TO THE JURY ON A THEORY OF AIDING AND ABETTING.

IV. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.

(a) DEFENSE COUNSEL FAILED TO SECURE THE ATTENDANCE OF AT LEAST ONE KEY DEFENSE WITNESS.

(b) DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT OR SEEK A CAUTIONARY INSTRUCTION.

(c) DEFENSE COUNSEL FAILED TO CHALLENGE CERTAIN MEMBERS OF THE JURY DURING VOIR DUE PROCESS.

V. THE ERRORS COMPLAINED OF VIOLATED DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS OF LAW UNDER BOTH THE MICHIGAN AND FEDERAL CONSTITUTIONS.

Petitioner's conviction was affirmed. *People v. Smith*, No. 238165, 2003 WL 21205980

(Mich. Ct. App. May 22, 2003).

Petitioner then filed an application for leave to appeal with the Michigan Supreme

Court raising the same claims as those presented before the Michigan Court of

Appeals. The Michigan Supreme Court denied leave to appeal because the court was

not "persuaded that the questions presented should be reviewed . . . ." *People v. Smith*,

671 N.W.2d 882 (Mich. 2003) (table).

Petitioner then filed a motion for relief from judgment, which was denied October

31, 2005.  Petitioner filed a delayed application for leave to appeal with the Michigan

Court of Appeals raising the following three claims:

> I. APPELLANT MARCEL SMITH IS INNOCENT.
>
> II. NEWLY DISCOVERED EVIDENCE OF PERJURY, UNLIKE MERE IMPEACHMENT EVIDENCE, IS GROUNDS FOR A NEW TRIAL.
>
> III. APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE USE OF PERJURED TESTIMONY.

Petitioner's delayed application was denied.  *People v. Smith*, No. 273898 (Mich. Ct.

App. May 3, 2007).  Petitioner then field an application for leave to appeal with the

Michigan Supreme Court and relief was denied "because the defendant has failed to

meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v.*

*Smith*, 741 N.W.2d 334 (Mich. 2007).  Petitioner now files a petition for writ of habeas

corpus under 28 U.S.C. §2254 raising the following claims:

> I. APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE USE OF PERJURED TESTIMONY.
>
> A. APPELLANT MARCEL SMITH IS INNOCENT.
>
> B.  NEWLY DISCOVERED EVIDENCE OF PERJURY, UNLIKE MERE IMPEACHMENT EVIDENCE, IS GROUNDS FOR A NEW TRIAL.
>
> C.  APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION BY THE USE OF PERJURED TESTIMONY.

4

D.  APPELLANT HAS PRESENTED CLEAR AND CONVINCING
EVIDENCE THAT THE STATE TRIAL COURT ERRED IN ITS FACTUAL
DETERMINATIONS REGARDING BAXTER'S RECANTATION.

E.  THE STATE COURT'S CAUSE AND PREJUDICE STANDARD HAS
BEEN SATISFIED.

II. PETITIONER'S FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS
RIGHTS TO A FAIR TRIAL WERE VIOLATED WHERE THE TRIAL COURT
ERRONEOUSLY DENIED HIS MOTION FOR DIRECTED VERDICT ON THE
CHARGE OF FIRST DEGREE PREMEDITATED MURDER AND SUBMITTED
THIS CHARGE TO THE JURY.

III. PETITIONER WAS DENIED HIS SIXTH AMENDMENT RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL.

## II.  STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case,

"circumscribe[d]" the standard of review federal courts must apply when considering

applications for a writ of habeas corpus raising constitutional claims, including claims of

ineffective assistance of counsel.  *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. §2254(d) imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect
to any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the State
Court proceeding.

28 U.S.C. §2254(d).  Therefore, federal courts are bound by a state court's adjudication

of a petitioner's claims unless the state court's decision was contrary to or involved an

unreasonable application of clearly established federal law.  *Franklin v. Francis,* 144

F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of

the writ; the state court's application of federal law "must have been objectively

unreasonable."  *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362,

409 (2000) (internal quotes omitted)).  Additionally, this court must presume the

correctness of state court factual determinations.  28 U.S.C. §2254(e)(1) ("In a

proceeding instituted by an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court, a determination of a factual issue

made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73

F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state

court findings of historical fact unless they are clearly erroneous").  The Supreme Court

explained the proper application of the "contrary to" clause:

> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts that are
> materially indistinguishable from a decision of this court and nevertheless
> arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas

corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-

court decision unreasonably applies the law of this Court to the facts of a prisoner's

6

2:07-cv-15274-RHC-SDP   Doc # 9   Filed 01/29/10   Pg 7 of 27   Pg ID 1497

case." *Id.* at 409.

> [A] federal habeas court making the "unreasonable application" inquiry
> should ask whether the state court's application of clearly established
> federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under §2254(d)(1)'s "unreasonable
> application" clause, then a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established federal law
> erroneously or incorrectly.  Rather, that application must also be
> unreasonable.

*Id.* at 409, 410-11; *see also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v.*

*Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th

Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III.  DISCUSSION

### A.  Whether Petitioner Was Denied a Fair Trial and Due Process Under the Fifth and Fourteenth Amendments to the United States Constitution by the Use of Allegedly Perjured Testimony

Petitioner asserts that he is entitled to habeas relief in the form of a new trial

because his conviction was based upon the perjured testimony of Baxter who falsely

testified at trial that Petitioner shot him in the leg.  (Pet. at 15-20.)  Petitioner argues that

the discovery of Baxter's purported perjury constitutes newly discovered evidence of

innocence.  (*Id.* at 15-16.)  In support of this claim, Petitioner offers a transcript of

Baxter in a "deposition" recorded on November 16, 2004, more than three years after

7

the trial.[2]  (Pet., Ex. B.)  Petitioner also offers Baxter's testimony at the hearing on the

motion for relief from judgment.  (Pet., Ex. C.)

At the hearing, Baxter testified that (1) he perjured himself at trial, (2) he did not

know who shot him on November 25, 2000, but it was not Petitioner, (3) he did not see

Petitioner there that day and did not even know Petitioner at that time, and (4) he falsely

told police that Petitioner shot him.  (Pet., Ex. C at 5-6.)  Baxter claimed that he perjured

himself at trial because he was being threatened by members of the "YBS" gang to

implicate Petitioner and his brother, Armstrong, in the shootings.  (Pet., Ex. B at 17-21.)

Baxter further stated that in June 2001 or July 2001, prior to trial, he was shot in the

knee by "White Boy," a YBS member.  (*Id.* at 31.)  Baxter claimed that he was shot in

order to send a message that the threats by "YBS" against Baxter and his family would

be fulfilled if his testimony at trial did not implicate Petitioner and Armstrong in the

shootings.  Baxter stated that after the trial concluded, the threats ceased.  (*Id.* at 20.)

The trial court found that Baxter's testimony was "not credible and inconsistent

with the other evidence" in the case and denied Petitioner's motion for relief from

judgment.  (Pet., Ex. A at 4.)  The Michigan Court of Appeals and the Michigan

Supreme Court denied Petitioner's applications for leave to appeal.

### 1.  Procedural Default

As an initial matter, Respondent contends that the petition should be denied

---

[2]At that time, attorneys representing Petitioner and Armstrong had apparently located Baxter and arranged to interview him under oath with a record being made by a stenographer.  No representative of the prosecution participated or was present, nor is there any indication that Petitioner or Armstrong provided either notice or an opportunity to appear.

because Petitioner's claims are barred by procedural default.  Petitioner's perjury claim

was raised for the first time in Petitioner's motion for relief from judgment.  The Supreme

Court has described the doctrine of procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in
> state court pursuant to an independent and adequate state procedural
> rule, federal habeas review of the claims is barred unless the prisoner can
> demonstrate cause for the default and actual prejudice as a result of the
> alleged violation of federal law, or demonstrate that failure to consider the
> claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Although the procedural default

doctrine precludes habeas relief on a defaulted claim absent satisfaction of the cause-

and-prejudice test, the doctrine is not jurisdictional.  *See Trest v. Cain*, 522 U.S. 87, 89

(1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).  Although the court

would ordinarily resolve the procedural default issue first, "judicial economy sometimes

dictates reaching the merits [of a claim] if the merits are easily resolvable against a

petitioner while the procedural bar issues are complicated."  *Barrett v. Acevedo*, 169

F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted); *see also Lambrix v.

Singletary*, 520 U.S. 518, 524-25 (1997); *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir.

2003)("[F]ederal courts are not required to address a procedural-default issue before

deciding against the petitioner on the merits.").

In this case, it is more efficient to proceed directly to the merits of Petitioner's

claims.

### 2.  Newly Discovered Evidence

### a. Reliability of Recantation Testimony

The court finds that the trial court's determination that Baxter's recantation

9

testimony was unreliable was not an unreasonable determination of the facts.  "[A]

determination of a factual issue made by a State court shall be presumed to be correct,"

and the petitioner has the burden of rebutting this presumption by clear and convincing

evidence.  28 U.S.C. § 2254(e)(1).  The trial court is in the best position to judge the

credibility of witnesses and "determinations of credibility and demeanor lie peculiarly

within a trial judge's province."  *Snyder v. Louisiana*, 128 S. Ct. 1203, 1208 (2008) (in

the context of a *Batson* claim) (quotation omitted).  Section 2254(d) "gives federal

habeas courts no license to redetermine credibility of witnesses whose demeanor has

been observed by the state trial court, but not by them."  *Marshall v. Lonberger*, 459

U.S. 422, 434 (1983).  In addition, affidavit or deposition testimony by witnesses

recanting their trial testimony is viewed with extreme suspicion.  *See McCray v.

Vasbinder*, 499 F.3d 568, 574 (6th Cir. 2007); *United States v. Willis*, 257 F.3d 636, 645

(6th Cir. 2001); *Williams v. Coyle,* 260 F.3d 684, 708 (6th Cir. 2001).

> The state trial court found that Baxter's testimony was not credible, stating:

> [T]his court had the opportunity to observe Baxter at the post conviction
> hearing where he testified, essentially, that his trial testimony identifying
> the defendant (Armstrong) was the result of fear of threats that were made
> by gang members and friends of the deceased.  This court finds Baxter's
> testimony not credible.  As indicated, prior to testifying in court, Baxter was
> "deposed" by counsel for Smith and counsel for Armstrong and was asked
> questions about his "recantation."  A reading of his "deposition" leaves the
> impression that he was unsure and certainly not consistent; on the other
> hand admitting that his trial testimony was correct and upon further
> pressing by the questions, conveniently changing his statements.

(Pet., Ex. A at 4.)  As the state trial judge had the opportunity to observe Baxter's

demeanor when he testified, his credibility determination is entitled to great deference.

*See generally United States v. Oregon State Medical Soc.*, 343 U.S. 326, 339 (1952)

("To the sophistication and sagacity of the trial judge the law confides the duty of appraisal." (quoting *Boyd v. Boyd*, 169 N.E. 632, 634 (N.Y. 1930)).  Moreover, this court's independent review of the record supports the trial court's finding.  The court agrees with the trial court that Baxter's testimony at his deposition, which was conducted in the absence of any participation –or, apparently, even any notice to– the prosecution, raises serious questions as to the veracity of Baxter's recanting statements.  The following examples from the "deposition" support the trial court's conclusion that Baxter "was unsure and certainly not consistent . . . [and was] conveniently changing his statements":

| | |
|---|---|
| [Petitioner's Attorney:] | And at trial you testified that the person – the passenger in the white Pontiac who was shooting at you was the Defendant Marcel Smith.  Do you remember testifying that way at trial? |
| [Baxter:] | Yes. |
| [Petitioner's Attorney:] | And was that true? |
| [Baxter:] | Yes. |
| [Petitioner's Attorney:] | That was true? |
| [Baxter:] | No, no, it wasn't |
| [Petitioner's Attorney:] | It was not true? |
| [Baxter:] | No, it wasn't. |

. . .

| | |
|---|---|
| [Petitioner's Attorney:] | At trial you testified that you had known Marcel Smith for approximately two years or at least known his name for approximately two years.  Do you remember that testimony? |

11

[Baxter:]                        No.

[Petitioner's Attorney:]         I'll find that testimony later.  If you gave such
                                 testimony, was that true?

[Baxter:]                        That I knew him for two years?

[Petitioner's Attorney:]         Yes.

[Baxter:]                        I think it was, but I didn't – somebody told me
                                 to say I knew him for two years after they done
                                 told me who it was.

[Petitioner's Attorney:]         Well, did you know him for two years or you
                                 didn't know him for two years?

[Baxter:]                        No, I didn't know him for two years.

[Petitioner's Attorney:]         You didn't know him for two years?

[Baxter:]                        Don't know him at all.

. . .

[Petitioner's Attorney:]         Had you talked to some of the people from the
                                 street before you gave this statement [to
                                 police]?

[Baxter:]                        Yes.

[Petitioner's Attorney:]         Now, before [in this deposition] you said you
                                 had not talked to people from the street before
                                 you gave this statement [to police], do you
                                 remember that?

[Baxter:]                        Yes.

[Petitioner's Attorney:]         Why did you give that answer?

[Baxter:]                        Because I was just talking to both of you at the
                                 same time and it was just so much stuff, I'm
                                 trying to remember.

[Petitioner's Attorney:]         But you're sure that you talked to your friends
                                 at the hospital before you talked to the police?

12

| | |
|---|---|
| [Baxter:] | Talked to citizens, yes. |
| . . . | |
| [Petitioner's Attorney:] | Where did you find out the name "Boobie"? |
| [Baxter:] | When I got to the precinct. |
| [Petitioner's Attorney:] | Did you ever hear of that from any of your friends on the street? |
| [Baxter:] | No. |
| [Petitioner's Attorney:] | Your friends on the street I thought you said previously had told you his name was Boobie? |
| [Baxter:] | Yes.  I got – you asking me two questions. Yeah, that's what happened. |
| [Petitioner's Attorney:] | So where did you find out the name Boobie? |
| [Baxter:] | From the streets. |

(Pet. Ex. B, at 5-6, 10, 23, 32.)  Thus, in addition to the lack of adversarial testing of the legitimacy of Baxter's statements at the deposition, the statements on their face raise serious questions as to their veracity.

In addition, Baxter's recantation testimony is suspect for the following reasons. First, his claim is inconsistent with the physical evidence produced at trial, i.e., shell casing location, the type of shell casing found, the manner in which McClain was shot. Second, his claim is also inconsistent with the circumstantial evidence produced at trial, i.e., the shooting events which occurred hours prior to the shooting of Baxter and McCLain.  Third, there is no evidence in the record to corroborate his claim that Petitioner was not involved in the shooting and his trial testimony identifying Petitioner as the shooter was consistent with the other evidence at trial.  *See, e.g.*, *Teagle v.*

13

*Diguglielmo*, No. 08-2587, 2009 WL 1941983, at *3 (3d Cir. June 11, 2009)

(unpublished case stating that witness' recantation of trial testimony was suspicious and

untrustworthy and "did not, in the absence of additional corroborating evidence or

circumstance, meet the standard of reliability contemplated by *Schlup*"); *Allen v.*

*Woodford*, 395 F.3d 979, 994 (9th Cir. 2005) (uncorroborated recantation is "even more

unreliable" where trial testimony was consistent with other evidence and recantation

was not)).  Fourth, there was an unexplained significant delay in Baxter coming forward

with his recantation testimony, i.e., 3 years.  Fifth, Baxter's deposition testimony lacked

many details, i.e., the identity of the YBS gang members instituting threats against

Baxter and his family, the identity of the YBS gang member who allegedly shot him in

the knee a couple of months prior to trial, the identity of the individuals who told Baxter

to falsely testify at trial by implicating Petitioner in the shooting.  Further, Baxter

produced no medical record corroboration to show that he was in fact shot in June or

July of 2001, supposedly as a warning to testify against Petitioner and implicate him in

the shooting.  Indeed, the hospital where Petitioner alleges he was treated has no

record of it.

Accordingly, the trial court's determination that Baxter's new testimony was

unreliable was not an unreasonable determination of the facts.

**b.  Presentation of False Testimony**

The United States Supreme Court has made clear that the "deliberate deception

of a court and jurors by the presentation of known false evidence is incompatible with

the 'rudimentary demands of justice.'"  *Giglio v. United States*, 405 U.S. 150, 153

14

(1972).  It is thus well-settled that "a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (footnote omitted); *see also Napue v. Illinois*, 360 U.S. 264, 271 (1959); *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998).  A habeas petitioner bears the burden of proving that the disputed testimony constituted perjury. *Napue*, 360 U.S. at 270.  Recantation of testimony alone, however, is insufficient to establish a due process violation.  To prevail on a claim that a conviction was obtained through the use of perjured testimony, a Petitioner must show that the statements were actually false, that the statements were material, and that the prosecutor knew (or should have known) that the statements were false.  *Coe*, 161 F.3d at 343.

Although the alleged perjured testimony was material, Petitioner has not made a showing that the other elements are satisfied.  First, he has not demonstrated that Baxter's trial testimony was actually false.  As discussed above, Baxter's recantation testimony is unreliable.  Although Baxter likely either committed perjury at Petitioner's trial in 2001 or perjury at the hearing on Petitioner's motion for relief from judgment in 2004, Petitioner has not established that the perjury occurred at his trial, instead of the later hearing.  To the contrary, the trial court's determination that Baxter was not telling the truth when he recanted is supported by the weight of the evidence.

Second, Petitioner has not alleged any facts to establish the prosecution knowingly presented false testimony.  At the hearing, Baxter admitted that he did not come forward with his admission that he lied until 2002, when he told his lawyer, Milton Henry.  (Pet., Ex. C at 14.)  The prosecution had reason to believe that Baxter testified

15

truthfully since his testimony was consistent with the other evidence at trial.  Petitioner

has failed to establish that the prosecution relied upon perjured testimony or knowingly

presented false testimony.  He is therefore not entitled to habeas relief on this claim.

### c. Actual Innocence

Petitioner also asserts that he is entitled to relief because he is actually innocent.

To the extent that he does so, he fails to state a claim upon which habeas relief may be

granted.  "Claims of actual innocence based on newly discovered evidence have never

been held to state a ground for federal habeas relief absent an independent

constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v.*

*Collins*, 506 U.S. 390, 400 (1993).  "[F]ederal habeas courts sit to ensure that

individuals are not imprisoned in violation of the Constitution – not to correct errors of

fact."  *Id*.  In *House v. Bell*, the Supreme Court declined to answer the question left open

in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual

innocence.  *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case

a truly persuasive demonstration of 'actual innocence' made after trial would render the

execution of a defendant unconstitutional and warrant federal habeas relief if there were

no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of

actual innocence based upon newly discovered evidence does not warrant federal

habeas relief.  *See Wright v. Stegall*, 247 F. App'x 709, 711 (6th Cir. 2007) ("Since the

Supreme Court has declined to recognize a freestanding innocence claim in habeas

corpus, outside the death-penalty context, this court finds that [petitioner] is not entitled

to relief under available Supreme Court precedent."); *Cress v. Palmer*, 484 F.3d 844,

16

854-55 (6th Cir. 2007); *see also Sitto v. Lafler*, No. 06-2203, 2008 WL 2224862, at *1 (6th Cir. May 28, 2008); *Tyler v. Mitchell*, 416 F.3d 500, 505 (6th Cir. 2005).  Thus, Petitioner's claim that he is actually innocent and has newly discovered evidence to prove it does not state a claim upon which habeas relief can be granted. *See Johnson v. Hofbauer*, 159 F. Supp. 2d 582, 606 (E.D. Mich. 2001).  He is therefore not entitled to relief on such a basis.

### B.  Directed Verdict on First-Degree Premeditated Murder Charge

Petitioner argues that he was denied a fair trial under the Fifth and Fourteenth Amendments when the trial court denied his motion for a directed verdict and submitted the charge of aiding and abetting first-degree premeditated murder to the jury.  (Pet. at 21-24.)  Specifically, "Petitioner submits that the evidence at trial showed only that he shot at Baxter and wounded him in the leg; it did not show that he shot at decedent (McClain) or that he intended to assist Armstrong in murdering McClain."  (*Id.* at 22.)

Petitioner's argument must fail if there was sufficient evidence from which to conclude that he was guilty of aiding and abetting first-degree premeditated murder. *See Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir. 1996) (rejecting same argument that the petitioner's due process right was violated when a motion for directed verdict was denied and a first-degree murder charge was submitted to the jury).  When reviewing the sufficiency of the evidence, "a federal habeas corpus court must consider whether there was sufficient evidence to justify a rational trier of fact's finding of guilt beyond a reasonable doubt." *Daniels*, 83 F.3d at 766 (citing *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the

17

essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

"To convict of first-degree murder, the prosecution was required to prove beyond a reasonable doubt that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberated." *People v. Youngblood*, 418 N.W.2d 472, 475 (Mich. Ct. App. 1988); *see also* Mich. Comp. Laws § 750.316(1)(a). "The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing." *People v. Anderson*, 531 N.W.2d 780, 786 (Mich. Ct. App. 1995). Relevant factors include "motive, as the result of a prior relationship between the parties, a weapon acquired and positioned in preparation for the homicide, circumstances and events surrounding the killing, and organized conduct prior or subsequent to the killing suggesting the existence of a plan." *Youngblood*, 418 N.W.2d at 475. Further, the actor must have the specific intent to kill in order to be convicted of first degree murder. *See People v. Hart*, 465 N.W.2d 328, 328 (Mich. 1991). As with premeditation, "[t]he specific intent to kill may be proven by inference from any facts in evidence." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir.1998) (internal quotation omitted). Specifically, and in addition to other factors, the court "may take into consideration 'the nature of the defendant's acts constituting the assault . . . [and] whether the instrument and means used were naturally adapted to produce death.'" *Id.* (quoting *People v. Taylor*, 375 N.W.2d 1, 8 (Mich. 1985)).

"To support a finding that a defendant aided and abetted a crime, the prosecution must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the

18

commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement." *People v. Izarraras-Placante*, 633 N.W.2d 18, 22 (Mich. Ct. App. 2001). "The aider and abettor's 'specific intent or his knowledge of the principal's specific intent may be inferred from circumstantial evidence.'" *Warren*, 161 F.3d at 361 (quoting *People v. Eggleston*, 386 N.W.2d 637, 639 (Mich. Ct. App.1986)).

Like the Michigan Court of Appeals, this court finds that there was sufficient evidence from which a rational jury could conclude that Petitioner was guilty beyond a reasonable doubt of aiding and abetting first-degree premeditated murder. *See Smith*, 2003 WL 21205980, at *4. Petitioner does not dispute that the first element of aiding and abetting is met in this case. (*See* Pet. at 22 ("Petitioner does not dispute that the actions of his co-defendant, Armstrong, may have given rise to Armstrong's charge of premeditated murder.").) Armstrong encountered the victims at the store, made a phone call when the victims left presumably in order to summon assistance, and then chased McClain into a field, where he shot and killed him.

There was also sufficient evidence for a jury to find that Petitioner performed acts and gave encouragement that assisted in the commission of the murder. Viewed in the light most favorable to the prosecution, it can be inferred that Armstrong called Petitioner and the others in order to have them assist in the murder. Seconds after Armstrong began chasing McClain, the car in which Petitioner was a passenger turned the corner and Petitioner began shooting. Even if Petitioner was not aiming at McClain, he was acting in concert with Armstrong's chase and shooting of McClain. By shooting Baxter, he prevented Baxter from assisting McClain and he limited the potential places

19

where McClain could flee.

With respect to the third element, there was sufficient circumstantial evidence for a jury to find beyond a reasonable doubt that Petitioner intended that the crime of first-degree premeditated murder occur or that Petitioner had knowledge that Armstrong intended to commit first-degree premeditated murder at the time Petitioner gave encouragement. A drive-by shooting occurred at Armstrong and Petitioner's mother's house hours before the shootings that gave rise to this case. Armstrong and Petitioner may have suspected McClain and Baxter's involvement and were looking to get revenge. After Armstrong encountered the two victims in the store, he made a cellular telephone call and then pursued McClain with a gun. Seconds later, two cars turned the corner firing multiple shots in the direction of Baxter. Baxter testified that over twenty shots came from the cars, that Petitioner was leaning out the window firing a semiautomatic handgun, and that Petitioner shot him in the leg. The gun linked to the shooting was later recovered from Petitioner's mother's house.

From these facts, a rational juror could find that Petitioner intended to kill Baxter, and that he also intended that Armstrong kill McClain. *People v. DeLisle*, 509 N.W.2d 885, 893 (Mich. Ct. App. 1993) (The jury is allowed "to infer intent to kill from the use of a dangerous weapon."); *see also People v. Johnson*, 220 N.W.2d 705 (Mich. Ct. App. 1974) ("The intentional discharge of a firearm at someone within range is an assault. The usual result and purpose of such an assault is death. [From] the unjustified and unexcused intention to kill when committing an assault . . . the jury could have properly inferred the existence of intent to commit murder."). Alternatively, a rational juror could have concluded that Petitioner knew Armstrong intended to kill McClain and that he

20

fired multiple shots at Baxter in order to prevent Baxter from assisting McClain, thereby facilitating Armstrong's murder of McClain.  *See Smith*, 2003 WL 21205980, at *4. Accordingly, there was sufficient evidence for a charge of aiding and abetting first-degree premeditated murder, and Petitioner was not denied a fair trial.  The court finds that the Michigan Court of Appeals' adjudication of Petitioner's claim was not an unreasonable application of clearly established federal law, and Petitioner is therefore not entitled to habeas relief on his claim.[3]

### C.  Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective because he failed to adequately challenge certain members of the jury during the voir dire process.

Petitioner argues as follows:

> With respect to the specific jurors that defense counsel failed to challenge, Petitioner  will set forth his position with respect to each individual juror by number.
>
> (a) Juror #10, Ms. White, indicated that she had a nephew shot and killed almost ten years earlier (T. 8-20-01, p. 55).  She further indicated that "they got off," (p. 56).  Juror #10 stated that she was "still [a]ffected by" the incident, but could put it aside and decide the instant case on its facts. (p. 58).

---

[3]Even if there was not sufficient evidence to support submitting this charge to the jury, Petitioner would not be entitled to habeas relief.  "[C]learly established Supreme Court law provides that a defendant has a right not to be *convicted* except upon proof of every element of a crime beyond a reasonable doubt; the Supreme Court has never held that the submission of a charge, upon which there is insufficient evidence, violates a defendant's constitutional rights where the defendant is acquitted of that charge." *Long v. Stovall,* 450 F. Supp. 2d 746, 752 (E.D. Mich. 2006) (quoting *Skrzycki v. Lafler,* 347 F. Supp. 2d 448, 453 (E.D. Mich. 2004)) (emphasis in original); *see also Aldrich v. Bock,* 327 F. Supp. 2d 743, 761-62 (E.D. Mich. 2004).  As Petitioner was not convicted of first-degree premeditated murder, only the lesser offense of second-degree murder, any conceivable error in submitting the first-degree charge to the trier of fact would be harmless.  Thus, there is an alternative basis for denying Petitioner's claim.

21

(b) Juror #14, Ms. Pettway, had a niece "that was murdered" about 15 years earlier (T. 8-20-01, p. 74).

(c)  Juror #7, Ms. Whigam, was asked whether she could follow the judge's instructions concerning a defendant's right to remain silent, she replied "a little" (T. 8-20-01, p. 87).  Petitioner did not testify.

(d) Juror #13, when asked if she believed that police can make an honest arrest but the arrested person be innocent, responded "I'm not sure, I['m] not aware of it."  This juror went on to state that she believed the mere accusation of murder meant "nothing" to her (T. 8-20-01, pp. 95-97).

(Pet. at 28-29.)[4]  Petitioner asserts that although the four referenced jurors may not have been excused for cause, trial counsel was derelict in his legal representation when he failed to use either a challenge for cause or a preemptory challenge and when he failed to question these jurors more closely.  The Michigan Court of Appeals rejected Petitioner's argument stating as follows:

> Defendant finally claims that his counsel's failure to challenge four prospective jurors deprived him of the effective assistance of counsel.  A lawyer's hunches, based on his observations, may be as valid as any method of choosing a jury, and decisions regarding which jurors to accept are the province of the attorney after consultation with his client. The strategic decision not to challenge a juror cannot be held to be ineffective assistance of counsel.

> At the *Ginther* hearing, trial counsel testified that he considered the jurors' body language, the manner in which each juror looked at defendant, the race and gender of the jurors, and the make-up of the remaining jury pool that would replace an excused juror.  Further, counsel testified that defendant did not express any concern about any of the above-mentioned jurors.  Here, there was no showing that the jurors were biased.  There is no showing that counsel was ineffective in failing to challenge these jurors.

*Smith,* 2003 WL 21205980, at *5-6 (internal citations omitted).

---

[4]The portion of the referenced voir dire testimony is missing from the Rule 5 materials.  However, the court's reliance upon Petitioner's citation to the record in support of his position still results in a denial of habeas relief on his ineffective assistance of counsel claim.

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test.  In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland,* 466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*.

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional  errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy,* 99 F.3d

23

1302, 1311-12 (6th Cir. 1996).

Applying the *Strickland* standard, where the partiality of a particular juror is at issue, the relevant question is "did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestations of impartiality have been believed." *Patton v. Yount,* 467 U.S. 1025, 1036 (1984). Trial counsel "is granted deference when conducting *voir dire.*" *Miller v. Webb,* 385 F.3d 666, 672 (6th Cir. 2004). Even if this court were to find that trial counsel's failure to challenge certain jurors constituted deficient performance, the Petitioner must still show that the jurors were actually biased against him in order to establish prejudice from his attorney's failure to strike or challenge the prospective jurors. *Johnson v. Luoma,* 425 F.3d 318, 328 (6th Cir. 2005).

"Actual bias" is "bias in fact" and focuses on the record at voir dire. *Id.* at 326. However, "[a] juror's express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias." *Hughes v. United States,* 258 F.3d 453; 458 (6th Cir. 2001). "The Supreme Court has upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on *voir dire.*" *Id.* at 458. The Supreme Court has enumerated various factors to be considered in determining whether a juror has a bias that would warrant being dismissed from the jury panel. *Murphy v. Florida,* 421 U.S. 794, 800 (1975).

The factor of relevance to this case is "any express indications of partiality by a juror." *Id.* It is Petitioner's position that the four above referenced  jurors expressed indications of partiality during their questioning because they either had relatives who had been murdered, or did not respond to questions regarding a defendant's innocence

24

and right to remain silent in a more assertive and neutral manner.

Case law provides that "it is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." *Miller v. Webb,* 385 F.3d at 673 (citing *Irvin v. Dowd,* 366 U.S. 717, 723 (1961)).  Petitioner admits that Juror #10 and Juror #13 made such statements during voir dire.  The sole fact that Juror #14 had a niece who was the victim of a homicide 15 years ago is not enough of a factual basis to exclude her from the jury pool, and Juror #7 admitted that she could follow the judge's jury instructions regarding a defendant's right to remain silent.

Moreover, decisions on whether to accept or strike certain jurors are matters of trial strategy.  *LaPine v. Renico*, No. 2:03-CV-282, 2006 WL 89862, at *3 (W.D. Mich. Jan. 12, 2006).  It is well-established that the courts will not second guess counsel on matters of trial strategy.  *Strickland*, 466 U.S. at 690.  It is an extremely rare case where a defense counsel's failure to challenge a juror may form the basis for a claim of ineffective assistance of counsel.  *People v. Robinson*, 397 N.W.2d 229, 231 (Mich. Ct. App. 1986) ("Our research has found no case in Michigan where defense counsel's failure to challenge a juror or jurors has been held to be ineffective assistance of counsel.  We cannot imagine a case where a court would so hold, and we do not so hold in this case."); *see also People v. Snyder*, No. 250047, 2004 WL 2072410, at *3 (Mich. Ct. App. Sept. 16, 2004).  "Jurors are presumed to be competent and impartial and the burden of proving otherwise is on the party seeking disqualification." *People v. Walker*, 412 N.W.2d 244, 245 (Mich. Ct. App. 1987).

Petitioner offers no evidence that any member of the jury judged his case unfairly. No "actual bias" or "bias in fact" has been shown on the record in accordance

with United States Supreme Court and federal law and the foregoing facts.  Therefore, the Michigan Court of Appeals' decision to affirm Petitioner's conviction relative to this issue was neither contrary to nor an unreasonable application of the relevant law regarding the issue of whether an attorney's representation can be deemed deficient for failing to challenge prospective jurors.  Accordingly, habeas relief is not warranted on this claim.

### D.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.[5]  28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . .  jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id.* at 336-37.  The court concludes that jurists of reason would not

---

[5]Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rule 11(a), 28 U.S.C. foll. § 2254.

26

find the court's assessment of the constitutional claims debatable or wrong.  The court

thus declines to issue Petitioner a certificate of appealability.

## IV.  CONCLUSION

Petitioner has not established that he is in the State of Michigan custody in

violation of the Constitution or laws of the United States.  Accordingly,

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Dkt. #1] is

DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue a certificate of

appealability.

> s/Robert H. Cleland
> ROBERT H. CLELAND
> UNITED STATES DISTRICT JUDGE

Dated:  January 29, 2010


I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, January 29, 2010, by electronic and/or ordinary mail.

> s/Lisa G. Wagner
> Case Manager and Deputy Clerk
> (313) 234-5522